IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAFAEL VÉLEZ CAJIGAS,

    Plaintiff

v.

ORDER OF ST. BENEDICT,

    Defendant

Civil No. 98-1335(SEC)

## OPINION AND ORDER

Pending before the Court is a motion for summary judgment filed by the defendant, the Order of St. Benedict, ("OSB"), on December 21, 1999. **(Docket #40)**.[1] For the reasons stated below, Defendant's motion is **GRANTED**.

**I.  Factual Background**

On April 1st, 1998 Rafael Vélez-Cajigas, ("Vélez-Cajigas"), filed the complaint in the case at bar against the OSB for declaratory and equitable relief, as well as for monetary damages pursuant to Title I of the Americans with Disabilities Act of 1990, (the "ADA"); 42 U.S.C. §§12102 et. seq. (Docket #1). Plaintiff claims that he was wrongfully "terminated" from his job as a school teacher at the private catholic school "Colegio San Antonio Abad", ("CSAA"), run by the OSB. Plaintiff's "termination" was allegedly discriminatory, based on Plaintiff's statements during confession to Father Oscar Rivera, the school Director and member of the OSB, that he had been infected with the Human Immunodeficiency Virus, ("HIV"). (Docket #1 ¶ I.1).

---

[1] On February 22nd, 2000 the Plaintiff filed an opposition, **(Docket #52)**, and the Defendant replied on March 16, 2000, **(Docket #59)**.



AO 72A
(Rev.8/82)

**Civil No. 98-1335(SEC)**                                                                                                  2

On December 21, 1999 the OSB moved for the entry of summary judgment dismissing this case on grounds that: (1) Mr. Vélez-Cajigas' work contract with the OSB was for a non-renewable term of one year only; (2) The terms of the contract provided that the offer of a similar contract for a subsequent school year was dependent on an evaluation by the OSB of the teacher's performance during the prior school year, and a new agreement; (3) At the expiration of his contract, Mr. Vélez-Cajigas was not extended a new contract on the basis of sound, administrative reasons and not on discriminatory reasons; (4) In addition, Mr. Vélez-Cajigas did not comply with the conditions demanded by the OSB for working at CSAA; and (5) Mr. Vélez-Cajigas was not regarded as a person infected with the HIV virus, and he did not have a record of such disease.

Plaintiff filed an opposition to the Defendant's motion for summary judgment on February 22, 2000. (Docket #52). In his opposition, Vélez-Cajigas argued that he had an expectation to continue working at CSAA in spite of his non-renewable one year contract, on grounds that his job performance was satisfactory and merited the execution of a subsequent contract. (Docket #52 ¶ 7). Plaintiff argued that the OSB's practice in managing the CSAA was responsible for creating this expectation, since most of their teachers were actually re-hired year after year. (Docket #52 ¶¶ 5-6). Regarding his illness, Plaintiff admitted that his medical files and work record did not reflect the fact that he was infected with the HIV virus, and that he was not regarded as having such disease. However, he did affirm that he told Father Oscar Rivera during confession, that he had been infected with the virus. (Docket #52 ¶ 8a).

In particular, the relevant clauses of the work contract involved in this litigation, specifically provided that:

Civil No. 98-1335(SEC)                                                                                          3

> B) The second party [the employee] has not received form the first party [the employer], or from any person related to it, any promise, offer, or assurances that could induce the second party to believe, expect, or pretend to have the terms of the contract extended or renewed.
> C) A similar subsequent contract between the parties would be the product of an evaluation of the second party's work, and a new agreement, which will not be considered a renewal.

Docket #40, Exh. 1. (Our translation).[2]

The OSB submitted evidence to the effect that its customary practice is to offer all of its teachers one-year contracts that are not renewable, such as the one granted to Mr. Vélez-Cajigas. Any subsequent contracts granted on a yearly basis depend on performance and other relevant factors considered by the school. In fact, in the last decade, the CSAA refused to grant subsequent contracts to over twenty teachers. Most of these worked at the school for a year or less. Docket #40, Exh. 2 ¶¶ 4-5; Exh. 3.

Mr. Vélez-Cajigas did not present evidence to rebut or contradict any of these facts. His only argument in this regard was that the contract "raised the possibility of the execution of subsequent contracts" and that most of the teachers did get their contracts renewed for several years. Docket #52 ¶ 5.

---

[2] The exact terms of the contract in Spanish were:

B) La Segunda Parte no ha recibido de la Primera Parte, ni de persona alguna relacionada con ésta, promesa, representación, ofertas, ni esperanzas que puedan inducir a la Segunda Parte a creer, esperar o pretender la renovación del plazo y términos de éste contrato.
C) Un contrato similar subsiguiente entre las partes, será producto de evaluación de la labor rendida por la Segunda Parte, y nuevo acuerdo, que no se considerará una renovación.

Docket #40, Exh. I. The defendant submitted these documents in Spanish pending translation pursuant to Local Rule 108(1).

AO 72A
(Rev.8/82)

**Civil No. 98-1335(SEC)**                                                                                              4

Regarding the reasons for not granting a new contract, the OSB produced evidence of several incidents which showed Mr. Vélez-Cajigas' problems controlling the students under his supervision. Docket #40, Exh. 2 ¶¶ 12-14; Exh. 7; Exh. 8 ¶¶ 7-8. In addition, the OSB submitted a record of Mr. Vélez-Cajigas' excessive amount of late days for work, on average by two hours, sometimes more, for the academic year 1996-1997. Docket #40, Exh. 2 ¶15; Exhs. 5, 8 ¶ 6. Mr. Vélez-Cajigas did not contradict any of these facts as submitted by the Defendant.

In addition, the OSB produced proof of Plaintiff's initial interest in becoming a monk and joining the OSB. The Defendant affirmed that the OSB "offered plaintiff a one year contract in the expectancy that he would in due time enter the order as a novice." Docket #40 at p. 14. Accordingly, the OSB notes that in addition to work, Plaintiff was given the opportunity to reside with other members of the Order in the monastery adjacent to the school. The OSB indicated that Mr. Vélez-Cajigas did not comply with the particular rules of the OSB, since Plaintiff often got drunk, and was seen intoxicated in the premises of the CSAA. Docket #40, Exh. 2 ¶ 9; Exhs. 9-10. The Plaintiff did not contradict any of these facts either.

Plaintiff's only proof consisted of his own unsworn declaration under penalty of perjury, where he does not make any specific statement and only affirms that "the facts [in counsel's motion] that make reference to my statement... are true." Docket #52, Exh. I. Plaintiff also included a list of all teachers working at CSAA during the academic years of 1994-95 (twenty-seven teachers), 1995-96 (thirty teachers), 1996-97 (thirty teachers), 1997-98 (thirty-two teachers), 1998-99 (twenty eight teachers). Docket #52, Exh. III. In addition, he produced a letter of recommendation signed on June 5, 1997 by the CSAA's school principal, Ms. Zenaida Aponte-Velázquez, whereby she states that Plaintiff's work performance was "very good" in all academic areas. Docket #52, Exh. IV. His last

**Civil No. 98-1335(SEC)** 5

exhibit was the copy of a work evaluation signed by Ms. Zenaida Aponte-Velázquez on March 15, 1997, where Plaintiff was rated as a very good teacher in most areas, except on the skill of "adequate management and distribution of time" (our translation.) Docket #52, Exh. V.

## II.  Analysis of Applicable Law

### A.  Summary Judgment Standard

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim... is asserted... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28 (1st Cir. 1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2725, p.401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. U.S. v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992); See also Boston Athletic Assn. v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989); Medina Muñoz v. R.J. Reynolds Tobacco, 896 F.2d 5, 8 (1st Cir. 1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

**Civil No. 98-1335(SEC)**                                                                                                                6

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, supra, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." Martínez v. Colón, 54 F.3d 980, 983-984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits of no room for credibility determinations, not room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Casas Office Machines, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case", Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1984); **the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions."** Lawton v. State Mutual Life Assurance Company of America, 101 F.3d 218, 223 (1st Cir. 1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue... Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment

**Civil No. 98-1335(SEC)** 7

proponent to configure the record is likely to prove fraught with consequence."); Medina Muñoz, 896 F.2d at 8, quoting Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

The Court agrees with the Defendant in finding that summary judgment is warranted in this case, since Defendant's arguments are based on: (1) the terms of an undisputed contract; (2) the legal interpretation to be attributed to that contract; and (3) facts that are uncontroverted by the plaintiff.

**B.     Contractual Obligations Due to the Plaintiff**

In this case it is undisputed that Plaintiff was not "terminated" from work.³ His work contract had in fact expired and a new contract for a subsequent year was not offered to him. Within this factual scenario, it is necessary to make a determination of whether or not the Defendant had assumed a contractual duty to re-hire the Plaintiff after his work contract expired.

Contractual interpretation is strictly a matter of Commonwealth Law where the contract at issue was signed and concluded in Puerto Rico, and the parties did not choose otherwise. See Pritchard, Ex'x v. Norton, 106 U.S. 124, 129-130 (1882) ("[W]hatever goes to the substance of the obligation and affects the rights of the parties, as growing out of the contract itself or inhering in it or attaching to it, is governed by the law of the contract.") On contractual interpretation, the Puerto Rico Civil Code Article 1233 expressly provides that: "If the terms of a contract are clear and leave

---

³ The word "termination" means "an ending of employment with a specific employer." Random House Unabridged Dictionary, "Termination" (2nd Ed. 1993). The verb "terminate" when used in the context of a work environment means "to dismiss from a job; fire." Random House Unabridged Dictionary, "Terminate" (2nd Ed. 1993). The facts reveal that Plaintiff was not dismissed or fired. Rather, his contract expired and a new contract was not offered, therefore the use of the noun "termination" or the verb "terminate" is imprecise or incorrect in Plaintiff's situation.

**Civil No. 98-1335(SEC)**                                                                                                    8

no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall also be observed." P.R. Laws Ann. tit. 31, § 3471 (1990). "The article is strict in its mandate that courts should enforce the literal sense of a written contract, unless the words are somehow contrary to the intent of the parties."(citations omitted), Fernández-Fernández v. Municipality of Bayamón, 942 F.Supp. 89, 94 (D.P.R. 1996).

The terms of a contract are considered "clear" when they are "sufficiently lucid to be understood to have a particular meaning, without room for doubt." Id., citing Sucn. Ramírez v. Tribunal Superior, 81 D.P.R. 357, 361 (1959). Finally, "[o]nce a court determines that the terms of a contract are sufficiently clear so that only one meaning is possible, the court cannot dwell on the 'alleged' intent of the parties at the time they entered into the contract." Fernández-Fernández v. Municipality of Bayamón, 942 F.Supp. at 94; See also Nike Intern. Ltd. v. Athletic Sales, Inc., 760 F.Supp. 22, 24 (D.P.R. 1991) ("Where contract terms and clauses are clear and unambiguous courts should abstain from speculating about possible intentions of parties and should interpret them according to their will expressed at the time of its execution.")

In this case the Court finds that the undisputed terms of the contract signed by Plaintiff Vélez-Cajigas were clear and unambiguous and that they expressly provided that Vélez-Cajigas' contract was non-renewable. In particular, the contract stated that the employee did not receive "from the [the employer], or from any person related to it, any promise, offer, or assurances that could induce [him] to believe, expect, or pretend to have the terms of the contract extended or renewed." Docket #40, Exh. 1(our translation), See n. 4. In addition, the contract expressed that: "A similar subsequent contract between the parties would be the product of an evaluation of the second party's work, **and a new agreement**, which will not be considered a renewal." Id.

AO 72A
(Rev.8/82)

**Civil No. 98-1335(SEC)**                                                                                         9

The Court is compelled to find by the clear terms of this agreement that Plaintiff's contract was non-renewable. In addition, the record reflects that Plaintiff's contract expired. Therefore, Plaintiff was not dismissed or terminated from work. Furthermore, pursuant to the terms of Plaintiff's contract, any future agreement would be the product of a positive evaluation of the employee's work by the Defendant and a new agreement. Consequently, Defendant's only obligation to the Plaintiff upon the expiration of the contract, was that of acting on a *bona fide* manner when considering whether or not to offer him a new contract. Accordingly, the Court will examine whether or not the OSB acted in a discriminatory manner when it refused to make another job offer to the Plaintiff.

### C.   Americans with Disabilities Act

Congress enacted the Americans with Disabilities Act with the main purpose of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C.A. §12101(b)(1). See also Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir. 1996); Jacques v. Clean-Up Group, Inc., 96 F.3d 506 (1st Cir. 1996). Employees who experience an adverse employment action as a result of their disability may thus obtain relief under the ADA if they establish (1) that they were disabled within the meaning of the Act; (2) that with or without a reasonable accommodation they were able to perform the essential functions of their job; and (3) **that they were discharged** in whole or in part **because of their disability**. Katz, 87 F.3d at 30. In the alternative, employees may establish their case indirectly "by using the prima facie case and burden shifting methods that originated in McDonnell Douglas Corp v. Green ..." (citations omitted). Jacques v. Clean-Up Group, 96 F.3d at 511. In this case, they must:

AO 72A
(Rev.8/82)

Civil No. 98-1335(SEC)                                                                                   10

>prove by a preponderance of the evidence that he or she (I) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) **was subject to an adverse employment action** by a company subject to the Act; (iv) was replaced by a non-disabled person **or was treated less favorably than non-disabled employees**; and (v) suffered damages as a result.

Id.

Plaintiff bears the initial burden of proof to establish a *prima facie* case. McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973). Once a prima *facie case* is established, the burden of proof then changes to the employer to assert a non-discriminatory, valid reason for the allegedly discriminatory action. McDonnell Douglas Corp, 411 U.S. 802-803; Serrano-Cruz, 109 F.3d at 25 (Once plaintiff has carried its burden of establishing a *prima facie* case "a presumption of discrimination arises that shifts the onus to the employer to come forward with a legitimate, non discriminatory reason for its actions.") However, the employer's burden is "merely one of production; **the burden of persuasion remains plaintiff's at all times.**" Lawrence v. Northrop Corp., 980 F.2d 66, 69 (1st Cir. 1992); Serrano-Cruz, 109 F.3d at 25-26 (Stating that **once the employer provides a legitimate non-discriminatory reason for dismissing the employee, "the burden shifts back to the plaintiff to show that the employer's justification is pretextual."**); St. Mary's Honor Center v. Hicks, 509 U.S. 502,, 515 (1993).

In this particular case we find that Plaintiff has failed to establish all of the elements of his claim pursuant to ADA. Even assuming that he is a disabled person within the meaning of the Act, and that he was qualified for the position, **he specifically failed to demonstrate that he suffered an adverse employment action from the OSB on account of his disability**. In this regard, it is pertinent to note that Plaintiff's teaching contract had a term of one year, and it was not renewable.

AO 72A
(Rev.8/82)

**Civil No. 98-1335(SEC)**                                                                                                               11

The Court's findings indicate that the contract did not provide for any extension to be granted to the Plaintiff as a matter of right. Quite the contrary, it provided that a subsequent contract was dependent on the OSB's evaluation of the teacher's work and a new agreement. The fact that most teachers had yearly contracts granted to them is of no consequence, for there is also evidence on the record of many other teachers whose contracts expired and were not retained by the CSAA.

In addition, in this particular case the OSB provided sufficient evidence in the form of sworn affidavits and school records, that show Plaintiff's difficulties in managing the students under his supervision, his frequent tardiness for work, and his corroborated unfitness to join the monastery. Plaintiff's only evidence on his behalf consists of an evaluation and letter of recommendation that qualify him as a teacher with good academic skills. However, Mr. Vélez-Cajigas did not contradict all the other evidence presented against him, his tardiness, his problems managing the students under his supervision, and his disrespect of monastic life.

Moreover, **Plaintiff failed to establish that the decision not to rehire him was really discriminatory.** The OSB had many legitimate and sound reasons not to extend another contract to the Plaintiff, which were not controverted by the Plaintiff with trial-worthy evidence. The Court's findings indicate that Defendant's only obligation was to act in good faith when considering whether or not to rehire the Plaintiff, and the Plaintiff in fact failed to establish a bad faith or discriminatory motive. Therefore, the Court finds that the OSB did not unlawfully discriminate against the Plaintiff on account of his disability. Consequently, Defendant's motion for summary judgment, **(Docket #40)**, is **GRANTED**. Plaintiff's complaint shall be dismissed with prejudice.

**SO ORDERED.**

AO 72A
(Rev.8/82)

**Civil No. 98-1335(SEC)** 12

In San Juan, Puerto Rico, this 21ST day of September, 2000.

*SALVADOR E. CASELLAS*
United States District Judge